And, let's see, Mr. Michael? I am. All right, you may proceed. May it please the Court, I am the attorney for the three corporate appellants, RDW Kilt, Inc., The One Stop, Inc., and WIPT, Inc. This case began as far as the relationship between the Hartkes and the corporations back in 2002 and 2003. It involved a promissory note, a $900,000 promissory note, and a real estate mortgage, and a number of transfers and other transactions that took place related to that. And there was a total indebtedness, at least acclaimed by the corporations as of 2016, of about $1.5 million. Now, in 2016, the attorney, by the name of Loper, wrote a demand letter to the Hartkes regarding this indebtedness and this mortgage. It's one of the exhibits in this appeal. And he demanded the repayment of the note protected by the mortgage and all the agreements between the parties. And he sent that to the Hartkes, all of the Hartkes. Now, the fact of the matter, which we don't dispute, is that at the time that that letter was written, that the statute of limitations on the note and the mortgages had run. It was a ten-year statute of limitations under Illinois law. And all parties agree, and Judge Magnuson and the district court agreed, that what we're applying here is Illinois law, because that's what the agreements between the parties in 2002 and 2003 agreed to, that Illinois law would apply to these particular agreements. But what happened after this demand letter in December of 2016 was sent by Attorney Loper is that the Hartkes then filed an action for declaratory relief. If the Hartkes had merely filed a one count action for declaratory relief saying the statute of limitations is run, you can't collect on these mortgages, these notes, and any obligation that we may have had to the corporations, this case would have not appeared because they were probably correct at that time. But that's not what the Hartkes did in their action for declaratory relief. They made these incredible allegations against Roger Waldner, who is in some way related to the corporations and had a relationship with the Hartkes. And according to the Hartkes, he is behind all of this legal negotiations that happened in 2002, 2003. And Roger Waldner, of course, has a case that's before this court also that follows this case.  But he makes basically the same allegations that we make here. But what the Hartkes said is, and I'll read out this whole list. They accused in their action for declaratory relief that, and when they make these accusations, they're making them against Waldner and the corporations. It's unclear which ones they're accusing at one particular time. They're claiming unclean hands. They're claiming unconscionable conduct. They're claiming a bad motive. They're claiming the use of fraudulent documents, fraudulent statements, a scheme to swindle the plaintiffs, the plaintiffs being the Hartkes in their declaratory relief. They planned that Roger Waldner planned and executed all these illegal conducts in relationship to the Hartkes. That the corporations were sham corporations. That he was laundering money, he was embezzling funds. He was looting the corporations. They stole assets of the plaintiffs. And even demanded that the Waldners, the Hartkes even said in their complaint that they even demanded that Waldner pay them some money or dismiss the case or that they would sue him. Now all these allegations are in this declaratory relief action. And because of that, that brings into play this whole thing called the Illinois Savings Clause. Because under Illinois law- You just listed a bunch of different allegations. Why isn't unclean hands just an affirmative defense? You're going to make the argument that it's an action. I'm trying to figure out why it's not just an affirmative defense. Because I think that when you look at what the Federal Rule 8A says, is that what a cause of action is or a claim is, is just something that you spell out in plain and simple terms. That's all you have to say. They don't use this concept cause of action anymore under the Federal Rules, which is what applies, Rule 8A. Because even if that one concept of unclean hands, you may construe it that way, all of their allegations aren't just affirmative defenses. They're positive allegations against Waldner and the corporations. Go ahead. Well, I want to start from Judge Strass' question and kind of build on that and maybe ask it in a different way. What is the relief? Granted, the declaratory judgment action contains these different allegations of unjust enrichment and all of that. But what's the relief that was sought in that complaint? In the Hartke's complaint for declaratory relief? Yes. The relief they sought was a declaratory judgment that, which the judge, Magnuson, even held, and let's read his final order, that plaintiff's motion for judgment on the pleading is granted. So they made a motion for judgment on their pleadings, whatever they declared. So the declaratory relief just makes the corporations' action null and void. Well, what they're asking for is they're asking the court to declare that this promissory note collection on this promissory notice is not going to be permitted. Right? I mean, it's an action, albeit it has these different theories. The point of it is to defend against and to seek from the court a determination that action on this promissory note is barred. Correct? It doesn't ask for any monetary relief. Would you agree with that? It doesn't seek any monetary relief. That may be true that it doesn't seek monetary relief, but what they're trying to do is deny the corporations an ability to raise a cross-complaint, to file their cross-complaint, and they have causes of action in the cross-complaint. So it's not so much what their relief that they're asking for is whether or not it denies the people that they're making, or the entities that they're making the allegations against the right to file a cross-complaint. If you don't have that right, any entity can claim, make spurious claims against other people and other parties in an action where the statute of limitations has run, knowing that the statute of limitations on their cause of action has run, so they can say anything they want and you don't have a right to respond. You said at the beginning that if the action had simply stopped after seeking a declaration that action on the promissory note is barred, that there would be no problem here. And I'm just pointing out that although it has these different allegations, in addition to that, the request for relief is the same. It doesn't add anything to what is sought. So I'm not sure I understand what difference it makes that in addition to the simple request for a declaratory judgment, these different allegations were added. Whether it makes a difference in terms of the heart case is one thing, but whether it opens the door to the corporations to make a counter complaint is what is important, because the counterclaim by the corporations is to seek to enforce the note and promissory note and the restraints on the property. That's a significant amount. And by the heart keys raising those issues in their declaratory judgment complaint, regardless of the remedy that they're seeking, that opens the door. It clearly opens the door for my clients to then come forward and say, well, we have now a right to file a cross complaint. And our cross complaint is seeking the same damages that we sought in the demand letter by the attorney Loper. So it's not so much the focus on what remedy the heart keys get. The focus is on does that establish a right for the corporations to now go forward with their cross complaint? Is that truly a cross or counterclaim? Or is that just sort of reasons why the heart keys shouldn't win on their declaratory judgment? I think the two concepts merge. Certainly, it's an argument that the heart key shouldn't win. Well, whether or not the heart keys win on any issue they raise is something that can be litigated. What the corporations are merely asking is, what we merely asked Judge Magnuson, is to open the courthouse doors. Let the heart keys go forward with their cause of action, and let the corporations go forward with their cross complaint or counter complaint. I don't think it makes any difference whether it's called a cross complaint or a counter complaint. It's the way I read the cases. But that's the problem I'm having. In addition to what Judge Shepard pointed out about the, when you figure out the substance of a cause of action, you do it two ways. You figure out the relief that is sought to determine whether it's equitable or legal. And then you also determine what the nature of the cause of action is. And I'm just not even sure that, even before you get to the relief, that this is a set off or counterclaim. I'm just not sure that it even fits into it, because these are things you do. The types of allegations you're talking about are things you do in response to a claim. They're not independent claims in and of themselves where you would seek damages. And so I don't even think the statute necessarily applies on its face. Well, you know, the Berrigan decision was really broad. And the Berrigan decision, the Illinois Supreme Court really rules. And the Berrigan decision says that when you have the door open to be able to plead a counterclaim, because the other party raised an issue that relieved you of being subject to the statute of limitations. Here's what the Berrigan said. You can even plead a counterclaim that is not factually related to the original claim. The plaintiff cannot withdraw the waiver, even if the plaintiff claim tries to withdraw it. So the ability to file a counterclaim, according to Berrigan in the Illinois Supreme Court, is broad. It doesn't even have to be factually related to the original claim itself. That's how the court said it. And this whole concept of a savings clause is not unique to the state of Illinois. The U.S. Supreme Court made the same kind of decision in this case called Bull v. United States, an IRS case, 295 U.S. 247, saying that a taxpayer can allege any cause of action back to the government's allegations. Any cause of action back to the government's allegations. Well, let me ask you this. I want to ask you this, which gets at the root of my problem, which is if they would have brought an independent, unclean hands claim during the statute of limitations, what would that have looked like and what relief would they have asked for? Could they do it? Sure. And what would it have looked like? They could have brought any action they want from 2003 on forward. No, I'm talking about it based on the allegations, what you call spurious allegations in the complaint. What would it have looked like had they brought it in in a cause of action? They file a complaint. Let's get rid of the declaratory judgment for a second. They bring a complaint within the statute of limitations. What would that have looked like and what would they have asked for? If they would have brought a lawsuit, you mean a lawsuit? A lawsuit. They would have made all the same allegations in a lawsuit, I would presume. Okay. All right? Then we would have been able to, or my clients would have been able to, file defense to that and also file a cross-complaint against them based on whatever the allegations that the corporations have. Well, that's the result. I'm asking you to put yourself in the shoes because this statute requires you to put yourself in the shoes of what they could have brought, what these allegations would have been, where they would have created an action. And so my question is, what would the action have looked like? Is there an action for unclean hands that they could have brought? And what would they have asked for for an unclean hands lawsuit? Because I've never seen that before, which is why I'm asking you. That's an interesting question. You're putting me in the shoes of an adversary. But I would say that they could have brought, based on their representations, and all I can do is base it on the representations they made in their declaratory relief motion, they could have brought all kinds of actions. I mean, they're claiming fraud. They're claiming other illegal conduct. They're claiming a scheme, a swindling scheme. They're talking about sham corporations. They're talking about laundering money. They're talking about embezzlement. They could have packed a lawsuit full of 100 allegations, as far as we can say. I don't know what facts they had to bear on that because they don't cite the facts in their motion for declaratory judgment. But I think that even though you may have, look, I'm down to 47 seconds. I want to reserve some time because there's a case called. We'll allow you some time. Thank you very much. So let me reserve my time and get back on that. Well, you can go ahead. We'll give you plenty of time to respond. Go ahead and answer Judge Strass' question, if you will. Okay. Even though there is a visceral feeling that some might have, and I went through that process, too, that, look, this is 15 years ago that this happened, and you just made this claim in 2016 for these agreements that happened in 2003 and 2002. Why should you not be subject to the statute of limitations? That's a visceral thing. But the Harkeys didn't have to say what they did. And if you read the cases, the concern that the Supreme Court had and that the Seventh Circuit had and that the Illinois Supreme Court had, their concern was to keep somebody from making allegations against somebody when they know the statute of limitations has run on that person's right to respond, so they can make any kind of allegations they want, and then that person can't respond because then they can claim a statute of limitations. That's the whole purpose of the savings clause, to keep entities or parties from doing that. Once you make those allegations and you knew about it back then when you're making those allegations, and clearly the Harkeys knew in 2002 and 2003 about these allegations, because otherwise they couldn't have made them. They're saying this is stuff that we knew back in 2002, 2003. They can't wait and make those allegations later after the statute of limitations has run on my client's ability to respond. Then you're helpless. An entity is helpless to respond. So once they did that, and they didn't have to do it. They didn't have to do it, but they did it, and they opened that door. These are public documents that everybody gets exposed to. The corporations have a right to come back in and say, that's wrong. That's not true. That conduct doesn't exist. We have a right to file a counterclaim. And that's how I wanted to answer that question. I hope it's satisfactory. And will I have a minute or so? Yes. Thank you. Mr. Larson. May it please the court. My name is David Larson. I'm representing the Harkeys and the Harkey Trust in this matter. You've read or will read my brief, so I'm not going to repeat all those arguments contained in the brief. Judge Magnuson's memorandum is succinct and a very persuasive summary of that, of our argument. And we would adopt it, Magnuson's memorandum. Here I believe the appellant displays a fundamental misunderstanding of affirmative defenses, when they can be raised. And the concept of justiciability. Affirmative defenses are raised in response to a complaint. That's what the rules of civil procedure say. And unclean hands is an affirmative defense. And I've cited many cases in the brief. I don't know what else I have to say about that. That's pretty clear. I have four additional points to make. Point one is that this action was triggered by a demand for repayment by Whippet, one of the corporations. Whippet was created in 2005, following all of the activity here except some of the sentencing activity, and is a successor to the State Bank of Winslow. So the note and the mortgages here were initiated and held by the State Bank of Winslow. And Mr. Michaels is saying that there should have been a case for fraud or something brought against someone back then. But a case against fraud would have been brought against Mr. Waldner. It would not have affected the State Bank of Winslow. It would not have affected these notes or the mortgages. And Whippet is a direct successor in interest of the State Bank of Winslow, not Roger Waldner. So had a judgment for fraud been brought against Roger Waldner back down in 2003 to 2005, it wouldn't have made any difference to these proceedings, or it may have helped in asserting an affirmative defense now of unclean hands. But it's not relevant really. Well, let me ask you the same question I ask counsel. With respect to the complaint for declaratory and injunctive relief filed by the Hartke Group, I'm not asking what the causes of action alleged or the theories that were alleged. What relief was sought? We were seeking invalidating the note and the mortgages here. Notes, there's two notes, and the mortgages. And that's what Judge Magnuson granted. So there was no request for monetary damages, for instance, or any kind of monetary relief? Nothing other than those two things. Now, if you had asserted a claim in that pleading, which could warrant an award of money, and you had made that request, and that was included in your prayer, do you agree that the savings statute would have permitted the WIPT defendants to counterclaim with respect to the otherwise barred promissory note? I'm not sure. Counterclaim to the extent of the relief, the monetary relief that you had sought. In other words, assert a claim under the promissory note, which was otherwise barred by limitations, but assert under the promissory note as a set-off against your monetary claim. And while you think about that, the reason I ask the question, that's my understanding as to the operation of the savings statute. It's a shield rather than a sword. It's a defensive device provided by the legislature to prevent a party from waiting until the adverse party's cause of action is barred by limitations, and then bringing their action, secure in the knowledge that a counterclaim could not be brought on the barred claim. And so it allows the holder of the otherwise limited, the claim barred by limitation, to assert that as a set-off against a claim for monetary relief that has been brought by the plaintiff. That's my understanding, too. But in answer to your question, the answer is I don't believe so. Had a claim for fraud, for instance, been included as, I guess, as part of the declaratory judgment, that would have been barred by the statute of limitations, too, along with everything else. You know, before you get started, I want to kind of follow up. It's a slightly different issue, but it's relevant, which is let's go to the Illinois statute real quick. It's a bizarre statute. I think the Seventh Circuit has called it, what, burdensome, or I don't remember the exact language they used. The Illinois statute makes a lot more sense than this one, than the analogous one. Yeah. So to any action, the cause of which was owned by the plaintiff. To any action, the cause of which was owned by the plaintiff. What does that mean, do you think? I think that means that it is able to be brought in a court that is a cause of action. Why does it distinguish between, and this is the bizarre part, and I think I might know the answer, but I want to see if you've thought about it, which is the action and the cause. Usually cause of action is one phrase, but here the action is separated from the cause, and both of those words are separated by a comma, so that the cause modifies the action. I've thought about that, and I've tried to figure out what they meant. I concluded finally that I should operate on the theory that it means cause of action. Well, the reason why I ask that is because your argument is this isn't an action. Under the plain language, the unclean hand isn't an action. It's an affirmative defense, and I understand that completely. But I wonder whether the cause of which, and I don't know the Illinois courts or the Seventh Circuit have recognized this, the cause of which may be the underlying facts that make up the cause of action, so it may deal with assignments. So, for example, if you were to assign your cause of action, you didn't own the cause of that cause of action until it was actually assigned to you, and so it wouldn't operate necessarily to an assignment unless the assignment occurred during the statute of limitations. I wonder if that might be what they're getting at, or maybe I'm just completely off base here. I've puzzled over this, and I've read a lot. There are a lot of cases on this statute, and I've read almost all of them, and none of them really deal with this question, so I don't know. So your best reading is it's separated, it's bizarre language, but it really just refers to cause of action. That's my thinking. Okay. I think I'll skip the second point because I think we covered it. Third point, oh, the third point is that back in 2003, Roger Waldner promised not to try to enforce these notes, and that's contained in paragraph 36 of the complaint, and he didn't for 14 years, not until we got this demand in December of 2016, and that fact takes away from the issue of justiciability, or is directly related to that issue anyway, that a legal action was not eminent, it was not contemplated, and didn't appear to be on the horizon until 2016. Finally, well, I have one more thing, but the Venturi opinion, I'd like to point out that the appellant miscites the language of that opinion. The appellant says that the Venturi did not own the claim underlying its declaratory judgment until the Venturi company received notification of its alleged defective work. Well, that's not the notification that they received. They received a notification of a claim that was going to be brought against them, which is different than notification of defective work or knowledge of defective work. I've done a fair amount of construction litigation, and I can tell you, most contractors know when there's a problem well before they receive a claim, but the claim part of it is what triggers the justiciability issue and makes the declaratory judgment appropriate. Finally, there is a case I came across recently. It's not, it deals with a lot of these issues, but I don't think it's dispositive, but I thought I'd brought it to the Court's attention so you could take a look at it. It's an unreported case, Central District of Illinois, 2013 Westlaw 5460209, and it is Duke v. Prism Marketing. Is it in the briefing? No, I just came across it as I was preparing for this argument. If you'd like the Court to consider it, you'll need to submit it in the proper manner with the 28J letter. Okay. Go ahead. Yeah, I'm not too sure. There's a lot of unresolved facts, and the facts are considerably different than those. It deals with the same statutes, however. I wanted to ask you about Judge Magnuson's theory about the declaratory judgment action, that it couldn't have been brought because it wasn't justiciable. You referenced that just a few minutes ago, and that gets back to that mysterious language I referenced earlier, which is it seems under a plain reading of the Illinois statute that it's not the action that triggers the relief under the Illinois savings statute. It's when the cause of the action came about. So just because I guess the implication is just because they couldn't sue in 2004 based on those facts didn't mean they didn't own the cause itself. There wasn't ownership of the unclean hands. And so my question for you is, was Judge Magnuson a little off base? His result may have been right, but his reasoning might have been a little bit off. Well, my theory on this is that the cause of action that's being referred to is the declaratory judgment cause of action. I know the federal courts don't consider declaratory judgments a cause of action, but the Illinois courts do. And the cause of action here accrued when the declaratory judgment became justiciable, which was in December of 2016. So both the cause and the cause of action originated in 2016, not 2003 or 2. I don't have anything further, Your Honor, unless there's additional questions. Okay. Thank you very much. All right. Counsel, take two minutes to finish up. Four things. Judge Magnuson's ruling, even though I believe his way he presented the issues as far as both parties are concerned and analyzed everything under Illinois law, he came to a conclusion in his order that says plaintiffs could not have brought a declaratory judgment claim before December 2016. But he doesn't support that with anything. He doesn't analyze the arguments that were made by the parties. So that's one commentary I had. It seemed like it was just a conclusory thing that I couldn't get my hands around because he doesn't explain it. Everything else he lays out is a proper representation of where the party's positions were. Number two, the declaratory relief action does make claims against the corporations. They say that the corporations were part of a scheme, that the corporations were sham corporations, that Waldner looted the corporations, that they stole assets of the plaintiffs through the corporations. So they make a number of allegations in that declaratory relief action against the corporations. Waldner plus the corporations, but still the corporations. Number three, I think Behringer really says a lot more than it's given credit for. Behringer says you can even plead counterclaims that are not factually related to the original claim. That seems to me to be something that really opens the door to once they make those allegations, that door is open. You can make any counterclaim that you were able to make before the statute of limitations expired. That's the other thing. The last thing is the Venturi case. Venturi case is easily distinguished from this case. Venturi did not know about any cause of action at the time that Austin made the demand on him. In other words, Venturi could not have done anything. They didn't know or should have known about any cause of action prior to the Austin letter, which was three years after the statute of limitations. So Venturi was in the clear. They can claim the statute of limitations. That's not the case here. The Hartke's knew of their cause of action. They knew all that stuff in 2002, 2003. They couldn't have said it unless they knew it because they're saying all that stuff happened. Your time has expired. Thank you, Your Honor. We understand the case. Thank you, counsel. The case is submitted. The court will render a decision in due course. With that, you may stand aside. Please call our next case. Lesbia Perez-Cazan, et al. v. Jefferson Sessions.